```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

**Femi Bogle-Assegai and**          :
**Kuba Assegai, as next friends**   :
**on behalf of their minor**        :
**daughter, N.B.,**                 :
    **Plaintiffs**                 :       Case No. 04cv2202 (JBA)
                                    :
**v.**                              :
                                    :
**Bloomfield Board of Education,**  :
**Donald Harris, David Title,**     :
    **Defendants.**                :

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**[Doc. # 35]**

Plaintiffs Femi Bogle-Assegai ("FA") and Kuba Assegai ("KA") bring this action pursuant to 42 U.S.C. § 1983 as individuals and as next friends on behalf of their minor daughter Nzingha Bogle-Assegai ("NA"), a former student at Bloomfield High School, against defendants the Bloomfield Board of Education ("Board"), Superintendent of Bloomfield Schools David Title, and Bloomfield High School Principal Donald Harris "to redress the deprivation by the defendants of rights secured to the plaintiffs by the Constitution of the United States of America," including the rights of due process and equal protection under the Fourteenth Amendment of the Constitution.[1]  See Second Am. Compl. [Doc. # 30].  The plaintiffs claim violation of these rights arising out

---

[1] As confirmed by plaintiffs' counsel at oral argument, plaintiffs' First Amendment retaliation claim is no longer pursued.

1

of the expulsion of NA from Bloomfield High School after an altercation between NA and another student, Allen Perry ("Perry"), on December 23, 2004.  Defendants now move for summary judgment on the basis that NA was afforded due process prior to her expulsion, that the expulsion decision was rationally related to the offense conduct established, and that the evidence cannot support an inference of unequal application of the School's disciplinary policies.  See Def. Mot. [Doc. # 35].  For the reasons that follow, defendants' motion will be granted.

**I.   Factual Background**

As noted above, this case arises out of a December 23, 2004 altercation between NA and a fellow student at Bloomfield High School, Allen Perry.  Although at the summary judgment stage the Court reads the evidence in the light most favorable to the plaintiffs, there is no evidence in the record supporting NA's version of events that day that are articulated in the Second Amended Complaint and the briefing.  Instead, the record reveals the following.

In connection with the School's investigation of the altercation, statements were taken from several Bloomfield High School students and employees.  The incident apparently originated as a verbal exchange or argument and escalated to a physical altercation.  Two students stated that NA pushed Perry (who had a broken leg at the time and was using at least one

crutch for mobility), one also stated that NA took off her jacket and "rushed" Perry while pushing him against a window, and that NA had Perry in a headlock.  See Asberry Stmt., Rochester Stmt. [Doc. # 38, Ex. 6].  One security guard stated that NA "was completely out of control," "was yelling at [Perry]," and "proceeded towards [Perry] and put her coat as she took it off around his head," and that Perry "never proceeded towards [NA] [and] never threw any punches."  Moses Stmt. [Doc. # 38, Ex. 6]. A second security guard, Ms. Matos, stated that she and another security guard noticed NA "pushing" Perry and saw her grab Perry "in a head lock and was punching in the forehead," and that Perry was taken to the School nurse "for a small cut to his forehead." Matos Stmt. [Doc. # 38, Ex. 6].  The testimony of Matos and a third security guard, Stacey Lawson, at NA's January 13, 2005 expulsion hearing discloses a similar story.  Matos testified that she observed a verbal argument between NA and Perry and saw NA jump on top of Perry, push him, and grab him in a headlock, and that NA's jacket scratched Perry.  1/13/05 Hrg. Tr. [Doc. # 43] at 56, 59-60, 78, 91.  Matos also testified that she did not observe any injury to NA after the altercation.  Id. at 65. After the incident, Matos had students Jamella Rochester and Rawshawn Asberry write statements of what they had observed.  Id. at 68.  Lawson testified that he observed NA yelling at another student, saw her "charge" and jump on him, and watched her "take

3

her jacket off and roll – and run at him and throw the jacket at him" and grab him in a headlock.  Id. at 21, 25-26.  Lawson did not see Perry strike NA.  Id. at 39, 47.

After the fight had concluded, Matos brought NA into the principal's office, where she spoke with Vice Principal Theriault, who avers that NA identified witnesses to the altercation – a student named Jamella (Rochester) and three employees – Lawson, Moses, and Matos.  Theriault Aff. [Doc. # 36-6] ¶ 7.  Theriault testified at the hearing that he interviewed everyone named by NA and no one corroborated her version of events.  1/13/05 Hrg. Tr. at 124; Theriault Aff. ¶ 9.  Assistant Principal Richardson also states in her affidavit that she personally investigated the situation by interviewing witnesses and that she "received no information from any source that [NA] had been struck or injured during the encounter, nor any information that she was anything other than the sole aggressor."  Richardson Aff. [Doc. # 36-3] ¶ 9; accord Harris Aff. [Doc. # 36-5] ¶ 8.  This lack of corroboration of NA's version was also confirmed by the testimony of Officer Martinez of the Bloomfield Police Department, who eventually arrested NA, who stated that he interviewed witnesses including two students, three security guards (Lawson, Moses, and Matos), and the School custodian, and based on this investigation he concluded that NA was "the primary and sole aggressor" in the altercation.  1/13/05 Hrg. Tr. at 168-

69.

When plaintiff was told she would likely be suspended for the altercation, she told Assistant Principal Richardson that she would come back to the School and "do something," which Richardson took as a threat against the School. Richardson Aff. ¶¶ 6-7. Additionally, when told of one of the student witnesses who had not corroborated her version of the events, NA threatened that she would "beat the other student's 'posterior.'" Theriault Aff. ¶ 10. NA also made threats to other students in the Principal's office, calling them "dykes" and "saying she would 'shank them.'" Theriault Aff. ¶ 11; Lawson Test., 1/13/05 Hrg. Tr. at 32 (Lawson heard NA say to another student "[t]hat she's a dyke and she needs to mind her business or she's going to shank her. If she had her shank, she would shank her just like she would have shanked Allen [Perry], if she had the shank"); Palmer Stmt. [Doc. # 38] (NA told her "you better shut up because I whooped his ass, and I will whoop your ass too, then Jamila walked out and she said you can get it too with your dike ass, and she said if she had a knife I would have shanked his ass").

Ultimately, NA was arrested and charged with breach of the peace and assault, and was detained for approximately 11 hours. FA Aff. [Doc. # 41-2] ¶ 3. She was also suspended for 10 days pending an expulsion hearing. Superintendent Title stated that Principal Harris sent him a letter requesting an expulsion

5

hearing, and that he reviewed the facts presented by School staff and it was his judgment that an expulsion hearing was needed. Title Aff. [Doc. # 38] ¶¶ 6-7, 10; accord Harris Aff. ¶ 9.  FA and KA were sent a letter on December 23, 2004 informing them of the incident and of NA's 10-day suspension "for threatening and assaulting another student, and making threats to the school." 12/23/04 Let. [Doc. # 38].  They were also sent a letter on January 4, 2005 informing them that an expulsion hearing would be held on January 13, 2005, providing the time and place and stating the authority under which the hearing would be held. 1/5/05 Let. [Doc. # 38].  The Bloomfield High School Student-Parent Handbook provides for disciplinary action in the form of "Out of School Suspension (OSS) and Possible Recommendation for Expulsion/Social Probation" for, inter alia, "Assault (10 days and possible arrest)" and "Threatening or verbal abuse or assault of staff members or other student (3-10 days and possible arrest)."  Handbook [Doc. # 38] at 31-32.  Both of these types of offenses are also marked with an asterisk, which the Handbook states, "[d]enotes first step toward recommendation for expulsion."  Id. at 32.  The Handbook further provides that "[d]isciplinary action will be imposed and a recommendation for expulsion may be made for students involved in a fight. . . Any students involved in a fight may be subject to arrest."  Id. at 33.

Accordingly, a hearing was held on January 13, 2005 before hearing officer Alvin Taylor, at which the plaintiffs were present, accompanied by their attorney Dawne Westbrook (also their counsel in this action).  See 1/13/05 Hrg. Tr. at 10 (introductions).  Although FA's affidavit states that "[a]t both the January 13 and 18 hearing dates, neither I, my husband, my daughter or my attorney of record were permitted to cross-examine any of the witnesses [and] were also not provided evidence regarding the names of any of the witnesses upon which the Board based their decision to recommend expulsion," FA Aff. ¶ 3; accord Pl. Opp. [Doc. # 41-1] at 7, the transcript of the January 13 hearing shows that Attorney Westbrook cross-examined the witnesses presented by the Board, 1/13/05 Hrg. Tr. at 33-34, 48, 69, 125, 154, 171, that plaintiffs chose not to put on a case, id. at 11, 15, 172, and that as detailed above, many witnesses testified about the events of December 23, 2004.

After all the evidence was presented on January 13, the hearing was continued to January 18 for determination, after issuance of the hearing officer's expulsion decision, of the length of expulsion.  The transcript of that hearing reflects that notice was provided by the hearing officer and counsel for the Board to Attorney Westbrook concerning the January 18 hearing date, and that the Board's counsel spoke with attorney Westbrook who indicated "that they understood that the Hearing Officer's

ruling was that the student was expelled and that there would be a hearing here today at which they could be present to be heard on the issue of length of expulsion. They – she indicated to me that the family did not want at this point the child to return – the student to return to this school and that they would not be participating in this stage of the proceeding, that they were waiving their right to participate." 1/18/06 Hrg. Tr. [Doc. #43] at 3-4. The hearing officer accepted the Board's recommendation for, inter alia, 180-day expulsion. Id. at 7-9.

## II. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual

8

assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Id. (citations omitted).  "If reasonable minds could differ as to the import of the evidence . . . and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation, citation, and alteration omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal quotation and citation omitted).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific

facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587. However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient. Matsushita, 475 U.S. at 586 (citations omitted).

**III. Discussion**

    A.   Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property'

interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" and the Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." Id. at 333.  However, the Supreme Court has also recognized that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . Due process is flexible and calls for such procedural protections as the particular situation demands." Id. at 334.  In order to establish a procedural due process violation, plaintiffs must "(1) identify a property right, (2) establish that governmental action with respect to that property right amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." Rosa R. v. Connelly, 889 F.2d 435, 438 (2d Cir. 1989).

The Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 577 (1972), held that property interests derive from state law, and Article 8, Section 1 of the Connecticut Constitution provides that "[t]here shall always be free public elementary and secondary schools in the state.  The general assembly shall implement this principle by appropriate legislation."  This

11

provision thus creates a property interest in the right to education.  See also Goss v. Lopez, 419 U.S. 565, 573 (1975) (Ohio state law directing local authorities to provide a free education to all residents between five and 21 years of age and a compulsory-attendance law requiring attendance for a school year of not less than 32 weeks established a "legitimate claim[] of entitlement to a public education" for due process purposes).  It cannot be disputed that the Board's expulsion of NA deprived her of this property interest.

The dispute thus centers on what process was due in order to render this deprivation constitutional.  Notwithstanding the assertions in FA's affidavit and plaintiff's opposition memorandum, and as plaintiffs' counsel acknowledged at oral argument, the January 13 hearing transcript undisputably establishes the opportunities afforded plaintiffs, through their counsel, to cross-examine witnesses and present their own witnesses, evidence, and arguments.  1/13/06 Hrg. Tr. at 33-34, 48, 69, 125, 154, 171 (cross-examination of witnesses by Attorney Westbrook); id. at 11, 15, 172 (Attorney Westbrook stated that she did not intend to call any witnesses, that NA would not testify unless necessary for impeachment, and that the "student does not wish to put on a case"); id. at 4-5, 126 (hearing officer outlined hearing procedure, including presentation of evidence by the Board and opportunity for plaintiffs' counsel to

cross-examine, as well as opportunity for plaintiffs' counsel to put on their case). There is thus no triable factual dispute as to what the hearing consisted of and the only issue is a legal one – was this process sufficient to pass constitutional muster?

The Supreme Court has stated that a court's analysis of the sufficiency of the process afforded "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. In Goss v. Lopez, 419 U.S. 565, 579 (1975), the Supreme Court held that "[a]t the very minimum . . . students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." Goss held that "in connection with a suspension of 10 days or less, [due process requires] that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Id. at 581. Goss further provided that "[l]onger suspensions or

expulsions for the remainder of the school term, or permanently, may require more formal procedures." Id. at 584.

Here, although the expulsion was for longer than 10 days – 180 was ultimately ordered – adequate process was provided. Plaintiffs were provided notice of the expulsion hearing, given the opportunity to be represented by counsel (which they were), and given a full-blown hearing including the presentation of opening arguments, summations, and evidence, the introduction of which was governed by the federal rules of evidence. Plaintiffs were given the opportunity to cross-examine witnesses, which their counsel Attorney Westbrook did, and opportunity to present their own evidence, which they declined.

Plaintiffs' claim, as articulated at oral argument, is that admission of, and/or reliance on, student statements to support the expulsion decision, without the students' presence at the hearing to afford cross-examination opportunity, was violative of due process. This argument fails. Plaintiffs cite to no authority, and the Court has found none, which would require that such an opportunity be provided by the defendant Board of Education.² Moreover, absence of this opportunity has not been

---

² At oral argument defendants cited two cases in which students were not afforded such a confrontation opportunity at expulsion hearings and their due process challenges were rejected. See Brewer v. Austin Indep. School Dist., 779 F.2d 260, 263 (5th Cir. 1985) (presentation of summaries of student witness statements at hearing where witnesses were not present and plaintiff thus had no opportunity to cross-examine them did

14

claimed or shown to have had consequence, inasmuch as numerous School employees testified at the hearing and were subject to cross examination by plaintiffs' counsel on their testimony about witnessing the altercation between NA and Perry, that NA was the sole aggressor, and that Perry did not strike or injure NA. Other School employees testified that they spoke with all student (and other) witnesses identified by NA and that none corroborated her version of events.  Thus, admission of any student statement at the hearing[3] without the student's availability for cross-examination purposes cannot support plaintiffs' procedural due process claim.

Accordingly, the Court finds that, as a matter of law, based on the undisputed facts in the record, the procedures afforded plaintiffs in connection with the expulsion hearing sufficed for procedural due process purposes, and defendants' motion directed to this claim will be granted.[4]  See also Rosa R., 889 F.2d at

---

not undermine sufficiency of process afforded); Boykins v. Fairfield Bd. of Educ., 492 F.2d 697, 701 (5th Cir. 1974) (admission of testimony of school principal who investigated the charges against plaintiff students, including reading or reciting statements made by teachers in response to his inquiries, was not violative of due process).

[3] It appears from the transcript that only one student statement was admitted and that Attorney Westbrook did not object to its admission.  See 1/13/05 Hrg. Tr. at 107.

[4] As confirmed by Attorney Westbrook at oral argument, plaintiffs' procedural due process claim is limited to the sufficiency of the procedures provided in connection with NA's expulsion; plaintiffs do not claim any insufficiency with respect

438-39 (affirming grant of summary judgment on procedural due process claim arising out of student's expulsion for 180 days where student and his mother received notice that the school board might impose a 180-day expulsion, were given "ample opportunity to present their views" at a hearing, and had "recourse to appeal the Board's decision to the state board of education before the allegedly unconstitutional deprivation took effect"); Cohn v. New Paltz Cent. School Dist., 363 F. Supp. 2d 421, 433 (N.D.N.Y. 2005) (holding that plaintiff failed to state a cause of action for violation of his procedural due process rights arising out of his expulsion from school for the remainder of the school year for alleged misconduct where "Plaintiff received notice of the charges and the hearing date . . . and that a disciplinary hearing was held [where] Plaintiff . . . outlined the errors made by Defendant [] in his appeals before the Board of Education and the Commissioner of Education [and] Plaintiff successfully vacated the disciplinary decision to which he objected by way of his Article 78 proceeding before the State Supreme Court"), aff'd 2006 WL 3147357 (2d Cir. Oct. 31, 2006) (slip op.).[5]

---

to her 10-day suspension pending the expulsion hearing.

[5] Plaintiffs do not appear to press their substantive due process claim. That claim, however, would also fail because there is insufficient record evidence to support an inference that defendants' deprivation of NA's right to education was "arbitrary." See Rosa R., 889 F.2d at 439. "[R]eview and

B.  Equal Protection

Plaintiffs' equal protection claim is that the School's zero-tolerance-for-violence policy was unequally applied to NA and not to Allen Perry who, plaintiffs claim, also engaged in an act of violence as evidenced by the injury on NA's head shown in the photographs taken a day after the altercation appended to the initial Complaint.  However, as Attorney Westbrook acknowledged at oral argument, neither the expulsion hearing record nor the summary judgment record contains any evidence which would causally link the injury shown in the photographs with the events of the preceding day, and all other evidence in the record

---

revision of a school suspension on substantive due process grounds [is] only available in a rare case where there was no rational relationship between the punishment and the offense," id., and no inference that such a relationship was lacking could be drawn here as the expulsion hearing transcript is replete with evidence that NA assaulted another student and made threats to other students and school staff, all violations of the Bloomfield High School Handbook.  Indeed, there was no evidence presented to support NA's version of events – not even NA's own testimony – and School personnel stated that they interviewed all witnesses identified by NA, and none corroborated her story.  Pursuant to the Bloomfield High School Handbook, this sort of behavior triggers disciplinary action in the form of "Out of School Suspension and Possible Recommendation for Expulsion/Social Probation," in addition to possible arrest.  Handbook at 31-32.  The Handbook also states that "[d]isciplinary action will be imposed and a recommendation for expulsion may be made for students involved in a fight."  Id. at 33.  With respect to NA's detention for 11 hours after her arrest, there is no evidence that defendants in this action detained her, and plaintiffs assert no claims of false arrest or malicious prosecution, nor do they cite any authority supporting imposition of substantive due process liability on school officials for contacting law enforcement officers to investigate potentially criminal conduct.

supports a conclusion that plaintiff was not injured as a result of the altercation.  See Taylor Aff. ¶ 13; Harris Aff. ¶ 8; Richardson Aff. ¶ 8; Theriault Aff. ¶ 13; 1/13/05 Hrg. Tr. at 65 (Matos testimony), 115 (Theriault testimony).  As NA never testified to contradict the evidence that she was the aggressor, that Perry's actions (if any) were defensive, and that NA was not injured, the photographs taken a day after the altercation, without more, would be insufficient to support a jury inference that NA sustained the injury pictured as a result of any act of violence by Perry during the altercation.  Defendants' motion as to the equal protection claim will thus also be granted.[6]

I. **Conclusion**

Accordingly, defendants' Motion for Summary Judgment [Doc. # 35] is GRANTED.  The Clerk is directed to close this case.

                                  IT IS SO ORDERED.

                                  /s/
                              Janet Bond Arterton
                              United States District Judge

**Dated at New Haven, Connecticut this 28th day of December, 2006.**

---

[6] In light of the Court's dismissal of plaintiffs' claims for the reasons detailed above, the Court need not reach defendants' arguments concerning qualified immunity.